UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIAN KAY NERSINGER,<br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>      Defendant. | Case # 1:18-CV-1479-DB<br><br>MEMORANDUM DECISION<br>AND ORDER |

## INTRODUCTION

Plaintiff Marian Kay Nersinger ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 12. Plaintiff also filed a reply. *See* ECF No. 13. For the reasons set forth below, Plaintiff's motion (ECF No. 11) is **DENIED**, and the Commissioner's motion (ECF No. 12) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed her SSI application on April 21, 2015, alleging disability beginning March 29, 2013 (the disability onset date). Transcript ("Tr.") 11, 164. Plaintiff alleged disability due to: "herniated discs in back L5/S1; arthritis in lumbar spine; daily pain 8/10; and COPD." Tr. 186. Plaintiff's application was denied initially on June 9, 2015, after which she requested an administrative hearing. Tr. 11, 62, 93. On August 3, 2017, Administrative Law Judge

Brian Battles (the "ALJ") presided over a video hearing from Alexandria, Virginia. Tr. Tr. 11, 24-61. Plaintiff appeared and testified at the hearing from Buffalo, New York, and was represented by Ida M. Comerford, an attorney. Tr. 11. Matthew C. Lampley, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on September 18, 2017, finding that Plaintiff was not disabled. Tr. 11-23. On October 23, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-3. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his September 18, 2017 decision:

1. The claimant has not engaged in substantial gainful activity since April 21, 2015, the application date (20 CFR 416.971 *et seq.*);

2. The claimant has the following severe impairments: Disc Herniations; Chronic Obstructive Pulmonary Disease ("COPD"); Hip Bursitis; Headaches and dizziness; and Obesity (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a),[1] except that the claimant can: stand and walk no more than two hours and sit no more than 6 hours in an eight-hour workday with normal breaks; can occasionally push and pull with her upper extremities; can occasionally balance, stoop, kneel, crouch, and crawl; can occasionally climb ramps or stairs; cannot climb ladders, ropes, or scaffolds; must avoid concentrated exposure to heat or cold; cannot work in an area with high concentrations of dust, fumes, gases, or other pulmonary irritants; cannot work in hazardous environments, such as unprotected heights, or around dangerous machinery and open flames;

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on May 3, 1979 and was 35 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue in this case because the claimant has no past relevant work (20 CFR 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416-969(a));

---

[1] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 21, 2015, the date the application was filed (20 CFR 416.920(1)).

Tr. at 11-23.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on April 21, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 23.

## **ANALYSIS**

Plaintiff's appeal asserts a single argument: The RFC determination is a product of the ALJ's lay judgment and is not supported by substantial evidence. *See* ECF No. 11-1 at 1, 12-18. A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

This is Plaintiff's second application for essentially the same alleged disabilities. *See* Tr. 71-81. Plaintiff was previously found not disabled on March 28, 2013. Tr. 81. Upon review of the record in the instant case, the Court finds that the ALJ thoroughly discussed the evidence of record, including the clinical findings and the medical opinions, and such evidence reasonably supported the ALJ's conclusion that Plaintiff had the RFC to perform sedentary work with the noted exceptions. Accordingly, the ALJ discharged his duty to formulate an RFC finding that properly accounted for all of Plaintiff's credible limitations, as supported by the record.

Plaintiff claims that because the evidence of record contained no medical opinion regarding the minimum or maximum time Plaintiff should sit, stand, or walk, the RFC determination is

improper. *See* ECF No. 11-1 at 12. Plaintiff's argument fails. First, it is Plaintiff's burden, not the Commissioner's, to demonstrate the functional limitations she claims. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating by reference 42 U.S.C. § 423(d)(5)(A)); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (it is Plaintiff's burden to establish that she is disabled); *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (finding an ALJ can deny benefits based on a lack of evidence on a matter for which the claimant bears the burden of proof). Accordingly, Plaintiff's attempt to shift this burden to the Commissioner is unavailing.

The majority of Plaintiff's argument is devoted to asserting that the ALJ should have accorded more weight to certain medical source opinions. However, Plaintiff cites to no medical evidence that would require a more limiting RFC than that found by the ALJ. Indeed, throughout the relevant period, treatment records failed to reflect any significant physical limitations. While a May 7, 2015 examination report from the Emergency Department ("ED") at Eastern Niagara Hospital noted decreased range of motion and tenderness in her back (Tr. 662), Plaintiff did not return to the ED until December 20, 2015, by which time her physical examination was normal (Tr. 668). On February 20, 2016, a physical examination in the ED was likewise normal. Tr. 673. Plaintiff next presented to the ED on July 17, 2016 complaining of a bruise on her thigh after she fell over a trash can. Tr. 677. Again, physical examination results were normal. Tr. 681.

Between December 7, 2015, and May 24, 2017, Plaintiff visited family nurse practitioner Michael J. Ostolski ("FNP Ostolski") 12 times. Tr. 701-36. Plaintiff complained of various issues at these visits, *e.g.*, dental issues, abscesses in the groin area, a dog bite, etc. *See, e.g.*, Tr. 701, 710,

6

728. The medical records during this period document no complaints of significant physical issues, and no findings of physical limitations and/or possibly disabling conditions. Tr. 701-36. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say"). The record reflects that Plaintiff's physical examinations were routinely normal. Tr. 701, 705, 708, 711, 714, 717, 720, 723, 726, 729, 732, 735. For example, on April 21, 2016, a physical examination revealed only an open blister on her right foot (Tr. 723), and a May 24, 2017 physical examination revealed only facial tenderness (Tr. 701).

Although the ALJ noted that Plaintiff's COPD was a severe impairment, treatment records from her healthcare provider consistently reflect normal blood oxygen saturation ("SPO2") levels,[2] denial of shortness of breath, coughing or wheezing, as well as denial of painful or swollen joints. Tr. 485-489, 494-495, 509, 513. More recent records also reflect denial of shortness of breath or gait abnormalities, as well as tingling or numbness. Tr. 702-703. In her last visit, Plaintiff was in no acute distress; she denied shortness of breath; cardiovascular findings were normal; and she was alert and oriented with an SPO2 of 97%. Tr. 705.

Furthermore, as discussed by the ALJ, objective testing results during the relevant period were also relatively benign. For example, MRI scans of Plaintiff's hips in January 2016 showed only mild bursitis and tendinopathy. Tr. 18, 558, 561. A January 5, 2016 MRI scan of the lumbar spine showed only mild arthropathy at L2-L3 and L5-S1, and there was actually some retraction of a disc herniation at L4-L5, when compared to a prior study. Tr. 693. A January 7, 2016 MRI scan of Plaintiff's left hip showed mild bursitis and tendinopathy. Tr. 558. An MRI scan of her right hip taken the same day showed bursitis and tendinopathy. Tr. 561.

---

[2] According to the Mayo Clinic, normal SPO2 levels range from 95 to 100 percent. Mayo Clinic, https://www.mayoclinic.org/symptoms/hypoxemia/basics/definition/sym-20050930 (last visited February 28, 2020).

7

With respect to the medical opinions of record, the ALJ properly found that the opinions positing more severe, disabling limitations were not supported by, or consistent with, the medical evidence of record, as outlined above. *See* 20 C.F.R. § 416.927(3)-(4) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give that medical opinion," and "the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"). Furthermore, an ALJ's RFC determination need not correspond to any particular medical opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order) (Although the ALJ's conclusion "may not perfectly correspond with any of the opinions of medical sources in his decision, [the ALJ] was entitled to weigh all of the medical evidence available to make an RFC finding that was consistent with the record as a whole."). Moreover, an ALJ is free to reach an RFC finding even without any supporting medical source opinions. *See, e.g. Corbiere v. Berryhill*, No. 18-cv-451, 2019 WL 318436, at *1 (2d Cir. Jan. 23, 2019); *Wright v. Berryhill*, 687 F. App'x. 45, 48-49 (2d Cir. April 14, 2017); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. Jan. 8, 2017).

On December 7, 2015, FNP Ostolski examined Plaintiff to assess her employability, pursuant to a New York State disability program. Tr. 751. He opined that Plaintiff was very limited in her abilities to lift, carry, push, and pull; and moderately limited in her abilities to walk, stand, and sit. Tr. 752. He stated that these limitations would be present for one-to-three months. *Id*. The ALJ found FNP Ostolski's opinion that Plaintiff had only moderate limitations in walking, standing, and sitting to be consistent not only with the benign treatment reports discussed above, but also with identical findings made by treating physician Andrew C. Hilburger, M.D. ("Dr. Hilburger"), who examined Plaintiff in October 2014 to assess her employability pursuant to a New York State disability program. Tr. 21, 752-54. Dr. Hilburger stated that Plaintiff was

8

moderately limited in her abilities to walk, stand, sit, push, and pull, and was very limited in her abilities to lift and carry. Tr. 752-54. The only extreme limitation assessed by Dr. Hillburger was not lifting over 20 pounds (Tr. 754), and that limitation is incorporated into the RFC for sedentary work. Tr. 17. The ALJ properly declined to accept FNP Ostolski's opinion that Plaintiff was very limited in her abilities to lift, carry, push and pull. Tr. 21, 752. As discussed by the ALJ, in addition to the benign reports discussed above, in May 2016, Plaintiff had full strength in all muscle groups. Tr. 21, 551. It is also noteworthy that FNP Ostolski stated that Plaintiff's limitations would only last one-to-three months. Tr. 21, 752. *See* 20 C.F.R. § 416.909 (impairments "must have lasted or must be expected to last for a continuous period of at least 12 months").

Dr. Hilburger also completed a functional evaluation on September 10, 2013, and diagnosed Plaintiff with lumbar radiculopathy. Tr. 755. He opined that Plaintiff is very limited in her ability to walk, sit, stand, climbs stairs, and other climbing, and also that Plaintiff is moderately limited in her ability to lift, carry, push, pull, and bend, and very limited in her ability to function in a work setting at a consistent pace. Tr. 756. Dr. Hilburger also opined Plaintiff should not engage in repetitive bending, lifting, and no lifting over 10 pounds. Tr. 756.

The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

9

The ALJ assigned some weight to the opinions of Dr. Hilburger dated September 10, 2013 (Tr. 753-56) and October 6, 2014 (Tr. 752-54). In September 2013, Dr. Hilburger indicated that he considered Plaintiff's radiculopathy to be permanent and opined that she was very limited in walking, sitting, standing, climbing stairs and other objects; had moderate limitations in carrying, pushing, pulling and should do no repetitive bending or lifting; or any lifting more than 10 pounds. Tr. 755. The following year, he opined that Plaintiff had only moderate limitations in walking, sitting, and standing and could do no lifting of more than 20 pounds, or any repetitive bending, lifting, pushing, or pulling. Tr. 754.

The ALJ noted that the two opinions are inconsistent, and he explained that he did not give controlling weight to the portion of Dr. Hilburger's opinion that Plaintiff is very limited in her ability to stand, walk, sit, and climb stairs because it was not well supported by the record; however, he did assign "great weight" to the limitations of lifting, carrying, pushing, and pulling. Tr. 20. The ALJ also noted that the record does not contain opinions from treating or examining physicians indicating that Plaintiff is disabled or has functional limitations greater than those determined in his decision.

In sum, Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ. Plaintiff, thus, fails to meet her burden to demonstrate that she had a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (unpublished summary order) (Plaintiff "had a duty to prove a more restrictive RFC, and failed to do so"); *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018)

(internal citations and quotations omitted). That is not the case here. The ALJ appropriately assessed the medical opinion evidence and the other objective medical evidence in the record to formulate Plaintiff's RFC. Accordingly, the Court finds that substantial evidence supported the ALJ's RFC despite Plaintiff's assertions to the contrary.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE